will begin with the first case on the calendar, 25-334, United States of America v. Apolinaris. I understand we have Attorney Atkins for the appellant, and you would like to reserve two minutes for rebuttal. Is that right? That's correct, Your Honor. You may proceed. Good morning, Your Honors, and may it please the Court. Siobhan Atkins from the Federal Defenders of New York on behalf of Defendant Appellant Caleb Apolinaris. The government here admits it made a regrettable error in promising Mr. Apolinaris in his plea agreement that restitution was not applicable. But it tries to avoid the consequences of that error through a series of claims on preservation and on the merits. None carry the day. First on the merits, the government, quote, agreed in the plea agreement's introductory paragraph and in the very next paragraph that restitution was, quote, not applicable under the facts of this case. It therefore necessarily agreed that it would not advocate for the precise thing it represented was not applicable. To the extent there is any ambiguity in this representation, which there is not, that ambiguity must be construed against the government in any event. So would you, would your position be if the government, when this came to light, that in fact there was eligibility for restitution, if the government had said in response to the judge, well, we're not going to take any position in that or we're not going to advocate for a particular amount of restitution if they just said it's, you know, he's eligible for it, but we take no position on anything else, and the judge had then imposed this same amount. Would you not have a claim? Most likely not, because this court's precedent has made clear that the line between simply honestly answering the court's questions and affirmative advocacy is the one that matters. That's most recently in the Rivera case from 2024. It's that crossing the line into not taking a position, as your Honor noted, and in fact taking a position and repeatedly urging the court to order restitution contrary to the plain terms of the plea agreement, that is what makes the difference here. Why is it contrary to the plain terms of the plea agreement if that section is just about the statutes that are applicable? Like, it is an error, right, that it was not correct, that there is no restitution statute that's applicable, right? So the government just agreed that, you know, this is our understanding of what's applicable, but then there's a separate part of the plea agreement that describes the undertakings and the commitments of the government. Isn't that right? So I want to make, I want to go first to the plain terms of the agreement on A-17 and A-18. In the introductory paragraph of the plea agreement, the government necessarily agrees to the following. The United States Attorney's Office for the Eastern District of New York, of the office, agrees to the following. And in the very next paragraph, the government represents this count carries the following penalties. Restitution not applicable. What would happen? Let me just sort of finish that. So it does, it says it carries the following penalties. You know, the penalties are maximum term of imprisonment 20 years, minimum term of imprisonment zero years. Obviously, it doesn't mean that they're going to advocate for zero years just because they acknowledge that that's possible. So why shouldn't we understand this first part of the plea agreement just being everybody's understanding about what the applicable statutes are, but the later part of the agreement is the commitments of each party as to what they would do. Well, so first I'd like to just know about, say something specific about a representation about restitution, which I think is distinguishable from a representation about simply another statutory penalty. And then I would like to answer Your Honor's broader question about whether or not this is a representation as to what the government intends to advocate for. So restitution is a somewhat unique penalty under the circumstances of this case because it's purely discretionary. And when the government makes a representation about restitution, it's more of a representation of fact based on what the government knows at the time. So the government is the one who's in contact with the victim's families in this case where the victim has passed away. It's the government who oftentimes under 18 U.S.C. 3664 is the one submitting proof of loss to probation department. And it's the government under 18 U.S.C. 3664 that ultimately bears the burden of proving loss to the district court if there's a dispute. So when the government represents that restitution is not applicable, it's making a representation of fact based on what it knows at the time. But it's not a representation of fact, right? The representation is that there are these statutory penalties, zero to 20 years. I mean, certainly if he commits a crime in a sentence to zero years, that would probably be unreasonable. So the range that they're describing is what the statutes allow for, not what they think is justified, right? Well, necessarily when the government agrees to something, it agrees not to advocate for that precise thing. And I think the government acknowledges, when it acknowledges it made an error here, it's not saying it made an error of law. It's saying that it made an error of fact as to what it knew based on the victim's losses. So again, with that language about agreeing to something and then following agreeing that the point is- But I still don't understand why it's a representation about facts, right? Yes. So one of the things they agreed to is that there's a maximum fine of a million dollars under 21 U.S.C. 841, right? But they did not advocate for that, any kind of fine. So it might be that they thought it wasn't justified. So if it was about the underlying facts, they wouldn't say, well, we could have a fine of a million dollars. Well, to take your Honor's example, if the government had turned around and advocated for a $2 million fine, it would likely still be in breach, even if it had made a mistake. That's not the point I'm making. The point I'm making is they represent that they could seek a maximum fine of a million dollars. Right. But that just means that that's what the statutes allow. In fact, all of these terms are accompanied by a statutory citation. So the idea that it is a representation about what they think is justified based on the facts doesn't seem consistent with the way it's  Even to take your Honor's representation about it being a representation that they could advocate for, by representing that restitution is not applicable, I think the government is saying we're not going to advocate for it here. I'm sorry to interrupt, but I guess an analogy to your point would be if they had included a guidelines calculation and said, you know, we don't think the sophisticated means enhancement is appropriate in, I don't know, say a fraud case. Yes. But with no explanation of why, they just say we agree it's not. Yes. You know, you could wonder, maybe they think there are no facts to back it up. Maybe there's some argument out there that, you know, there's no cross-reference as a legal matter. But no matter how they slice it, they took a position, it's a litigating position. It may be totally wrong, but now they're not allowed to make a contrary representation on whatever it is to the court. I guess that's what you're arguing for. That's precisely the case. And I think, you know, the Lawler case speaks to this, right? There, you know, the government used very similar language saying it agreed that a certain guideline was, quote, applicable to count one. It then took the contrary position after the PSR, you know, recommended the application of a different guideline and said the PSR was correct. That was found to be a breach because it had, it contradicted what the government had said about what was applicable to count one. Could we turn to, I guess, I have a quick prefatory question and then a different question. The first one is I just want to clarify the relief that you're seeking for your client. There's no argument here that the plea was not knowing involuntary and that therefore the defendant is seeking to withdraw the plea. Am I understanding that correctly? That's correct, yeah. You're just seeking resentencing? Okay. So then the second question I have would then be to go to the waiver forfeiture argument. And as I understand the government's argument, they point to the district court solicitation of views of the parties the day before sentencing and the initial submission by the defense in response said we're subject to the funeral expenses but not for the victim's lost wages. So once the defense makes an affirmative representation to the court, said I could be on the hook for that. Now, I don't want it because I'm indigent or whatever. And then when the district court punts on the issue and says, well, you know, we're going to get to this a little bit later. We'll come back for another hearing. But says at a minimum, you're on the hook for funeral expenses. Doesn't that really take away, let's say, the sting of the breach? Tell me why that's not a viable argument. Yes, absolutely. So and I should have been clear about this in my papers. Those initial letters from the parties, it looks like, again, as Your Honor noted, they came the day before sentencing. Defense counsel, it appears, may have submitted his letter even before the government submitted their letter. So he wasn't even, you know, it's arguable that he wasn't even aware of what that the government had taken into consideration. But what does it matter? Because the defense, my point is, regardless of what the government said, the defense comes in and says, oh, Your Honor, as a statutory matter, I could be on the hook for funeral expenses. So if the defendant affirmatively comes in with a position that is also inconsistent with what it agreed in the plea agreement, then why aren't we sort of just poof? That representation on both parts kind of goes poof because the defendant has said, yeah, yeah, yeah, I'm on the hook for this. Now, I don't want you to give it to me. But I understand statutorily it's not not applicable. Because the court, they specifically say it's not that I'm not subject to it. But I would ask you as a matter of mercy or discretion not to impose it. That's different from saying not applicable, right? Well, again, I mean, it's the government. It's about the government. Our objection is to the government's advocacy. No, I know. But what I'm saying is, why is it not the case that you've waived any argument one way or the other about it when the defense affirmatively, and as you're saying, maybe even in advance of knowing what the government was or wasn't going to say, comes out and says, oh, court, you can do it? So who cares what the government says? Because the defense itself said we can do it. I think acknowledging that under the terms of the statute, the court could impose restitution is very different from, as the government contends, saying that the court should impose restitution or that the government is entitled to argue for it. Of course, under the plain terms of the statute, the defendant was acknowledging that the court could impose restitution. But it was acknowledging. In terms of this waiver question, I guess what you would say is, well, once the government was advocating for it, we pointed out that that's a breach. But it makes sense that the focus of our arguments were on convincing the district court not to do it because the district court's not bound by the plea agreement. Exactly. Exactly. The district court is not bound by the plea agreement. We had many arguments, though, as to why any restitution should certainly be limited. And again, we noted. But it is true that you did not say to the district court, the government and the defendant agreed that restitution was not applicable, meaning the parties seem to not. The parties think that it's not even available as a remedy. You did not say that to the district court. We did not say that to the district court. But we did note that we noted that the parties agreed that it was not applicable and that the government was in breach of that agreement based on the facts of the case. And we've said that as long as you sort of apprise the district court that you think the government is in breach of a plea agreement, that's enough. Exactly. Exactly. In the Wilson case, it's all about whether or not it was sufficient to apprise the court of the nature of the error. And that's precisely what defense counsel said. I guess one problem, arguably, for your side is, depending on how you read the defendant's second submission, where they mention the breach, is, and I'm looking at Appendix 157, could it be read as saying here that the government is in breach. It says, in breach of the agreement, the government now asked the court to impose the $222,000, which is including the wages and everything. And it never says, oh, and the breach is a reason to impose zero. Or the breach is a reason not to impose restitution. What they do then is goes on to say, hey, but I'm eligible for the funeral expenses. Or I'm subject to this funeral expenses. How is the district court supposed to be in an alert to an argument that wasn't made? I think that this was perfectly sufficient to apprise the district court of the nature of the error. Under Rule 51, I just want to go back to sort of the fundamentals. In order to preserve an error, all a defendant is required to do is either tell the court of the action it wishes the court to take, which would be saying, strike the restitution obligation as a government content. The conclusion I look at 159 says, therefore, the court should order restitution of no more than $10,000. But the nature of a breach argument would be, no, no, no, it's zero. Well, no more than $10,000 necessarily encompasses zero, right? If I'm a district judge, I'm supposed to intuit that there's this other argument out there that the whole thing should go poof because they're not arguing what they should? I don't see that in that letter. So on page 157 and on, I believe it's 158, the defense counsel, or maybe it's 150. Yes, 159. 157 and 159. In the first page of the letter, that's where defense counsel says, we agreed that restitution was not applicable. It's in breach. The government is in breach, right? Under Rule 51. But don't you have to give a therefore? Therefore, there's a breach. Here's the violation. Here's the remedy I want. And it sounds like the remedy is in the therefore, judge, please do X, right? Like you always say, therefore, please overturn the conviction. Therefore, please vacate the case. And when I read the conclusion, it says, you may order no more than $32,000, but the court should do no more than $10,000. So I just want to answer your Honor's question about whether or not a remedy is always, you know, a request as a remedy is always required for preservation purposes. And then, I don't know, always. But I just mean, as I read this, I'm not sure that the district court was on alert or was alerted that that's the problem that should be zeroed out. Because I think that's what you want, right? You're not saying $32,000 is enough or is OK. You're saying it should be. A defendant is never required to request a specific remedy in order to preserve a claim of error. It's just about whether it's sufficient to apprise the court. The remedy also is not that you think that it should necessarily be zero. It's that you were entitled to a district court assessing a restitution obligation without the government advocating for it. Precisely. Precisely. That is the true nature of the error. It's about. So the way you would sort of understand what that submission to the district court would be to say that you were saying the government is in breach of its plea agreement. Therefore, really, there shouldn't be restitution at all. But you seem intent on doing restitution. And so therefore, we're going to ask you for the lowest possible amount. Precisely. I mean, I think it's a classic example of arguing the alternative. And again, under this court's case law in Wilson, for example, where the defendant repeatedly objected to the nature of the advocacy and said the guideline range that they're advocating for is much higher, even when the defendant never even pointed to precise provision of the plea agreement. That's exactly what the defendant did here. OK. So I have two other questions. So one is, we do have this case, United States versus Casase. I understand that it's a summary order. So maybe that's just the answer that you think it's wrong. But do you think that that's right? It's just wrong? Or it's somehow distinguishable from what we have here? I think it deals with a very different circumstance. Because there, as the court took pains to note, there was not even an allegation that the government engaged in forbidden advocacy. So the question was just whether the district court erred in imposing restitution, despite the representation of the plea agreement. Well, our court said that the language about the restitution, the NA, stands in stark contrast to the affirmative language found elsewhere in the agreement where the government and Casase expressly agreed to certain terms, including that a sentence can be no more than 20 years. So the idea was, our court seemed to believe that this recitation of what's applicable was not an affirmative obligation about advocacy. I don't think the court was taking that position. I mean, it was in a footnote. And it said, it's unclear whether there was an error because of the difference between what the plea agreement said in that first paragraph and what it said elsewhere. I could not find the language of the precise plea agreement in Casase, because it's an older case. But putting aside that we don't know what the precise language was, we don't know whether there was that introductory paragraph where the government necessarily agreed to what followed directly below it, the error was different in that it was about a district court's ability to impose restitution despite the plea agreement. And the court noted, it's unclear. Any lack of clarity about what a representation in a plea agreement is in the context of a plea agreement that we have here, any ambiguity must be construed against the government and in favor of a remedy for the defendant. OK, and what about the idea that the plea agreement does say that there is a maximum fine of $1 million. He does not end up paying a fine. He just pays restitution in the amount of $30 some odd thousand dollars. So if there is a breach, it's a de minimis breach because he was on notice that the government could advocate for a fine up to $1 million. And if, in fact, they advocated for a financial penalty much less than that, it doesn't violate any kind of notice interest. Well, I mean, your honors captured the standard precisely. It's about a defendant's reasonable expectations. And simply being on notice that the government might advocate for a fine is quite different from being on notice that the government might advocate for a restitution when it's represented that it's not applicable. And that's because of the difference between the standards for imposing a fine and the difference necessarily in the government's advocacy for it as opposed to restitution. When a defendant is indigent, as my client is and was, the presumption is that the court will not impose a fine. In fact, this court has said that it's oftentimes an abuse of discretion to impose a fine that exceeds a defendant's ability to pay. So if we could imagine a circumstance where the government came to Mr. Aquinas and said, I know that we agreed that restitution was not applicable, but that you could be exposed to a fine of up to $1 million. We actually are going to recommend that there be a fine of $1 million. But we would forbear from doing that if you agree that we would just advocate for restitution of $30,000. You think it's obvious that he would choose the $30,000? That's right. Sorry, he would choose the $1 million fine. The advocacy? He would choose the $1 million fine if that were the choice. Isn't it obviously worse for him? I think the question is not about what is ultimately imposed. Again, the district. Well, the question is what violates his reliance interests in the agreement. And so if he could expect the government would advocate for a financial penalty of up to $1 million, in fact, the government advocates for a financial penalty of only $30,000 ultimately. It does seem to be within what he would expect. The only difference is the payee to whom the financial obligation is directed. I disagree because the advocacy is of a completely different color in the fine context as opposed to the restitution context. Again, because of differing standards. When the government asks for restitution, it is far more likely to get it. And so I do not think that a defendant's reasonable expectations would have been honored when the government advocated for, gave that defendant a choice. Can I just clarify? I think I understand the remedy you're seeking here would be remand, not a plenary resentencing, but a limited remand in which we would vacate the restitution award, reassign it to another judge. I think we always do that whenever there's a breach. Regardless, that would not be viewed as any way impugning the actions of the district judge who had the case, but just saying we require someone to look at it for whom the record before it was not infected by the impermissible advocacy. Would that be the remedy? That would be the remedy. That's correct.  So we also have just on this, the point I was making before we got this case, United States versus Doyle, right? The plea agreement indicated restitution of only $105,000, but also said the forfeiture amount of $880,000 in raising Doyle's restitution figure to match the forfeiture amount. The district court made clear that his combined financial obligation was capped at $880,000. And then we said the government district court merely chose to channel the $880,000 Doyle owed to the government to the victim. So you also think that was wrongly decided, right? Because you think it's not enough that you're just changing the payee, actually. The nature of the obligation matters. Well, I think it's certainly true that the nature of the obligation matters. Of course, that case is also a summary order. And that was a case in which the parties had agreed to forfeiture. So the question was just whether to channel that into a different... The parties did not agree to a fine here. And certainly did not agree that the government could advocate for restitution when it said it was not applicable. And I think if I understand what your argument was, there's a qualitatively different pitch for restitution than a fine. If the court usually is going to be less inclined to give a fine because it says, well, it's just going to the government, whatever. But when you have an actual victim, this mother whose child was tragically lost to her, the court is going to be far more likely to look favorably upon a request for restitution, quite appropriately. Yes, that's correct. We would look at that. That's correct. Okay. Unless you have other questions. Thank you. Thank you very much. Let's hear from the government. May it please the court. My name is Bracha Gaikadosh. I am a special assistant United States attorney in the Eastern District of New York. This court should affirm the district court's restitution order, which imposed restitution in the amount of $32,209 for the victim's funeral costs and related expenses after the victim overdosed on fentanyl sold to him by the defendant. Were you counsel below? No, I was not, Your Honor. Okay. How on earth is this not a breach? How on earth? This thing, I mean, I'm reading it and I've read a lot of plea agreements. I've attended a lot of sentencings. The parties agree to the following. And your basic argument is that we didn't really agree. Help me with that. Yes, Your Honor. That portion of the plea agreement is a recitation. I get it. It's a recitation that you agreed to. Are you saying you agreed to it, but you didn't mean it was true? You agreed to it, but you agreed also that you could argue it was incorrect. Help me with what agree means, because I only know it to mean one thing. And I've never seen, I'll just tell you right now, I've never seen the government do something like this and not get reversed. So help me with that. I understand, Your Honor. And I think we talked about how that's a recitation, but I think- How does that matter? Everything else is a recitation. Isn't everything else a recitation? What else do you do besides recite things that are the subject of your agreement? So tell me what that means. Yes, Your Honor. There are other portions in the plea agreement where the government expressly stipulates that it will or will not do certain things. For instance, on page three of the plea agreement, which is page 819 of the appendix, the government and the defendant agree to recommend that the defendant be sentenced to an imprisonment of 135 months to 168 months. So that's an express agreement. Also, on page- The way to understand the plea agreement is, the first section is, this is the basis of the parties' mutual understanding on which we undertake to make the following promises, and only what follows are the actual promises. That's essentially right, Your Honor. That section just puts forth what the parties believe is the applicable law. If that's true, then why shouldn't the government's response to the district court have been something like, well, we originally didn't believe that restitution was applicable, but if you're intent on applying it, here's what we think. Or something like that, just to acknowledge that you had agreed that it wasn't applicable. The government in the district court proceedings did not acknowledge the N.A. in the plea agreement, and I think the reason for that could be, in part, that there's a clause in the plea agreement that says there are no other implicit promises. All the promises need to be explicit. And like the one promise, which is N.A., you keep saying the stuff that follows, we agree as follows, doesn't actually constitute an agreement, that you can agree to stuff and not be bound by it. That is, to me, a shocking proposition. I mean, I'm looking at other things. Let's say page four, the defendant agrees to pay the special assessment by check payable. You're saying, well, he agrees to it, but he doesn't have to do it. Tell me how that agree is different from the first agree. Your Honor, that section of the plea agreement lists what the applicable law is. No, I'm talking about page four. Tell me how the defendant agrees to pay the special assessment. I just want to know, does agree start meaning different things at different places in the plea agreement? No, Your Honor, and I think that's why the government... So what is it? It agrees to pay. That's a promise, right? Yes, Your Honor. And if he doesn't do it, he would be in breach of the plea agreement, right? That's correct, Your Honor. So when you agree to some stuff up front, you're like, well, but some of the paragraphs, if we don't take the same position, we're not breaching the plea agreement. So some people can agree to some things and some don't have to? Well, I think there are different parts of the plea agreement. Yeah, I know. And those different parts, the first part is a recitation of the law. So but you're just sort of saying also that the first part is not about advocacy. It might be an agreement that this is what you think is applicable. So I guess in the first part, since both parties agree to it, it means that Apollinaris also agreed that the maximum term of imprisonment was 20 years. But if he had argued to the district court, actually, you cannot impose a term of imprisonment of 20 years, because that would be entirely unreasonable and therefore unlawful. You have to do it no more than 10 years or something. Would you regard that as a breach of the plea agreement? Well, that would be his argument. So look. But I'm saying under this agreement, would he be allowed to make that argument? That actually going to the maximum term of imprisonment would be unlawful. Would you consider it a breach if he made that argument at his sentencing? No, that would not be a breach. So you're saying even for him, you wouldn't regard advocacy that's inconsistent with the mutual understanding to be a breach. Well, but that's only the maximum that's listed, right? What if this were a drug case where you had, I can't even remember. Is there a min-min? There's a maximum term and there's- So let's say this were a B1B. Let's say there's a minimum five. And he comes in and he argues, I'm not subject to a min-min. Give me four. And it's only in the recitation part where you have the five to 40. He comes in and argues for four. Would you regard that as a breach? That would be an incorrect statement. No, I didn't ask you that question. Yeah, what did I ask you? You asked me if it would be a breach.  But would it be a breach, yes or no, for the defendant to come in and advocate that he could get four years because there is no mandatory minimum? I would not call that a breach, Your Honor. You would not call that a breach. I would call that an incorrect statement of the law. And not a breach of the plea agreement. If it's an incorrect statement of the law, it's an incorrect statement of the law. This section- Even if he agreed that it was a five-year, you wouldn't say, well, he's stopped from arguing that? I would say that he's made a misstatement of the law. So we spoke a little bit about the section of statutory penalty. Let me just say this, too. This is the kind of argument that- I'm not seeing how this is in the long-term interest of the government to make such arguments because it undermines the credibility of the government when it's making an agreement and you have the other side think they're buying into an agreement to say, I'm signing on to this, but it doesn't really mean what every court has ever looked at it. Whenever I have seen something like this and a judge always inquires about something, the response has always been, Your Honor, you asked me what the statute allows. The statute allows whatever it means. But we acknowledge the fact that we agreed in the plea agreement not to ask for it. We're not advocating one way or the other. I have seen that so many times. I don't understand what I saw in this case. I just want to make that clear. I understand the court's point. And we understand that prosecutors are held to very high standards. As I mentioned, I cannot answer why this happened as I was not the prosecutor. Obviously, you weren't. But I guess I am wondering why the government is making this kind of an argument that it's not a breach on appeal. I think the reason for that is because the defendant's own conduct- If the court does find that there was a breach, the defendant's own conduct ratified anyway. That I get. Well, just in terms of this question about whether it's in the interest of the government, I mean, I guess you would say that it would be in the interest of the government if we understand the recitation of the applicable law, not to be binding if it turns out we made a mistake of law, that really the things that the parties should be held to are the actual undertakings and promises that are outlined in the agreement, right? Yes, Your Honor. Yes. You feel like that distinction, I mean, as Judge Nardini was just explaining, to the extent there was a mistake and you became aware of that mistake and the court is asking what's available, it's quite different to say, yes, it's applicable, it's available, you're not going to take a position because in the plea agreement, this is what we said. To go from that to actually advocating for restitution, to me, it's a very distinct point and to the expectation that the defendant thought, oh, they're not going to advocate for restitution, seems a reasonable one. And so I understand that the idea that, well, this was a mistake, but the response to that mistake to say, well, not only is it applicable, Judge, here's why you should impose $200,000 or whatever it was, I think that's the part that's, it has a very strong feeling of a lack of good faith because it's not the mistake, anyone can make a mistake. And of course, you are obligated to explain your position when the court asks you, but to go beyond that and to say it's applicable and you should give it and you should give it and the maximum amount that's being requested is very different. I agree that the- I understand. I'm sorry. I know that's not really, I guess, a question, but that's the part that is problematic. I think, like Your Honor mentioned, those are two different things, but I think if we look at the conduct as a whole, including the defendant's own conduct, the defendant throughout the course of the prosecution, after the court requested submissions from both the parties on the issue of restitution- Well, yeah, he did do that, but why isn't the way we should understand that to be, well, he pointed out the breach, but the district court is not bound by the terms of the plea agreement. So if the district court was intent on imposing restitution, it made sense that he'd focus on the arguments about what the district court should do if it were to impose restitution, but he didn't point out the breach to the court, right? He pointed it out, but it was one sentence. And like the court previously mentioned, there was no ask, there was no relief requested. It seems to be a stray sentence in a longer letter that acknowledges that the court can impose restitution in the amount of about $32,000. Okay, so I guess I get that argument, but then you also have an argument that even if it is a breach, it's de minimis because he knew that he was being exposed to a financial penalty of much more than the penalty to which he was actually exposed. Now, opposing counsel says, well, that argument doesn't really work because it makes a difference as to whether the financial penalty being imposed is a restitution or a fine. So what's your response to that? My response is that this court's jurisprudence makes it clear that as long as the defendant was on notice that there could be some financial penalty, it doesn't really matter where it comes from. I understand that there are nuances, there's a difference between restitution and a fine. However, this defendant was told at the plea colloquy that he could face a fine of a million dollars. He could face a special assessment of $100. And so he certainly knew that he might have to pay something, even though the likelihood might have been small, he was certainly on notice of that. But was the likelihood small? So what would be the basis for the fine? And if it were to go back, could you advocate for a fine that's greater than the $30,000? As I stand here now, I can't answer that question. However, I do know that he was put on notice. And so he knew that he might have to pay something. That amount ended up being $32,000. And I just want to step back for a moment and just mention the court's actual restitution order. In that order, Judge Brody herself acknowledged that both parties agree that restitution can be paid in the amount of $32,000. And I'm paraphrasing. But she herself acknowledged that. But she acknowledged it could be, but said, please don't. And the government said, no, please do. So it wasn't that both parties made the same advocacy pitch. Because then you would say, well, look, if they both came in and said, look, eligible for $32,000, and please impose $32,000, then you would say, well, who cares about the advocacy? But they weren't asking for $32,000. They were asking for $10,000 at most. They really wanted $0,000. But at most, they wanted $10,000. The government didn't come in and say, yeah, that's good. That's good by us. Statutorily, up to $32,000, no more than $10,000. But what the court does, do what you want. We're mirroring what the defense says. That'd be different. But the government came in and made a different advocacy pitch from what the defendant did. So you can't say, well, we just mirrored what the defense said and made a contrary pitch to what they had agreed in the plea agreement. Well, actually, Your Honor, in the December 19th letters submitted by the defendant, he never requested $0. He did request $0. No more than $10,000. Take that. Let's say he said capital 10. Is that something, is that a pitch that was perfectly mirrored by the government? I didn't think so. I thought the government said, please give $32,000. So yes, the government submitted a January 2nd, 2025 letter where it said $32,000, which mirrored. Which, no, that mirrored one thing. That mirrored one thing. But that's not what they said. They didn't say, please impose $32,000. Government said, please impose $32,000. The defense said, please no more than $10,000. That's not a mirror. The government said that, I'm sorry. The defendant said that the court could impose approximately $32,000.  But then said, advocacy-wise, no more than $10,000, please. Yes, Your Honor. Is that total pitch mirrored by the government? The answer is no, correct? The answer is no. And the reason for that, the reason why the defendant asked for $10,000 was because of the defendant's indigent status, which Judge Brody took into consideration. We're not talking about Judge Brody making an error. No, I understand. I understand, Your Honor. I'm talking about, did the government's advocacy mirror that of the defense? And I don't see that it did. It seems like there was one thing that the government said, you can and should impose $32,000. And the defense said, you can impose $32,000, but you should not. That is correct, Your Honor. So there were not mirrored pitches? They were not identical pitches. Well, I suppose that we understand the plea agreement to have been an agreement between the parties as to what statutory penalties were available. The government did mirror the defendant's position on what the statute allowed. So you did agree with the interpretation of the extent to which restitution is authorized. You just didn't agree with the extra reduction based on indigent status. That's absolutely right. The government agreed with the defendant that costs could be imposed for funeral expenses in the amount of approximately $32,000. Right. And you disagreed with the PSR that wanted to include other restitution to the mother and so on. Right. And ultimately, the government didn't seek that restitution. It stayed focused on the $32,000. Ultimately, because it got it wrong the first time, right? Your Honor, we admit that the NA that was included should not have been included. No, I'm talking about the first sentencing letter where they asked for $222,000, right? Yes, Your Honor. We came down to $32,000. I mean, wasn't the first sentencing memorandum for the government asking for the lost wages and everything? It did acknowledge the lost wages. And again, you expect better from the government. You expect the government to know this stuff. Your Honor, what I can say is that the defendant ratified this conduct. You know, we talked a little bit about how he did not bring up the issue of this brief until the second letter. So there was the first letter. And I know counsel mentioned the fact that the defendant didn't see the government's letter when the defendant filed that first letter. However, within that first letter, the defendant could have mentioned there that- I'm talking about the government's conduct. The government held to a high standard here. And I just think that you may want to go back to your offices. Whatever the outcome of this case is, I don't know. But this was not operating at the level that it is expected of the government. So I want to take that message back. We'll hear from the appellant. Thank you, Your Honor. Just a few brief points on ratification, waiver, and whether plain error review is applicable here. There's no ratification. That requires unequivocal conduct, expressly disavowing the existence of a reach. That's not what defense counsel did here. Waiver requires the intentional relinquishment of a known right. That's not what counsel did here. Counsel did not relinquish a right. He repeatedly and unequivocally pointed out that the government was in breach of his plea agreement. Repeatedly? I thought he just mentioned it in the second submission. He mentioned it in the second submission twice. In the very first page to alert the district court that this was a change in position. Suggesting that maybe if the government's position had mirrored the defendant's position and said, yeah, just $10,000, would there be no breach of those circumstances? I think, most likely, we would still be arguing breach. Perhaps there would be a question as to whether or not a defendant's reasonable expectations would have been fulfilled. I don't think so, though. Again, it's the government who tells you. So it would still be a breach? Yes, that's correct. But it would have been maybe a waived breach. Because if the defense, sort of an invited error doctrine, right? If the government says, I'll promise not to argue for x, and the defense walks into the district court and says, please do x, then who cares what the government says? Because it's the defendant who's asking the court to do something. I'm not suggesting that that's what happened here. This is a hypothetical different situation where I don't know what. Perhaps. Perhaps. I mean, it's certainly a very different situation from what occurred here. Defense counsel was not inviting restitution. You're saying that the plea agreement was an agreement between the government and the And the government did agree with the defendant's position on what the statute authorized. Or what it's necessarily also a representation about what the government intends to advocate for. The government, again, is uniquely in possession of facts about what restitution is warranted and appropriate based on its unique role communicating with victims, communicating with victims' families. And so when the government represents that restitution is not applicable based on the facts that it knows about the case, that is multilingual. Based on the facts that it knows about the case. But I just don't see how this section of the plea agreement is a representation about the underlying facts because it is just talking about what is available under the statutes. Restitution. So for example, like that part of the agreement says the minimum term is zero years and the maximum term is 20 years. But then later in the agreement, they agree to advocate for a particular term of years. So it can't possibly be that this section is a representation that based on the underlying facts, we agree that this is what the sentence should be. That's just saying what's available under the applicable statutes. Well, when it comes to restitution, of course, in order for restitution to be applicable under the relevant statute, it's a determination of fact as to whether or not a victim is claiming losses, whether or not the government believes it can prove those losses. And so it's necessarily a representation about what the government intends to argue. It's about what's available under the statutes. And then the later section is, well, given the facts of this case, here's what we would see given the available range under the statutes. Well, is there a dollar amount that could be plugged into restitution if you just look at the statute? I can't remember. Is there a dollar cap? Like, I don't know. Restitution, there's a dollar amount or whatever special assessment. And remind me, and I apologize. Is there like a maximum million dollar restitution or is it just key to the losses? Typically, my understanding, and I don't have the statute in front of me, but typically the language that the government puts in a plea agreement, if it's, you know, sometimes it plugs in an amount based on what it knows about the losses. Oftentimes, it will say in an amount to be determined by the district court. No, my point being that my recollection, and I apologize, I don't have the statute in front of me, is that there is no hard dollar cap in restitution. So one can't put in a number in restitution just by looking at a statute. One could only put a number in based on what the known facts are. That's correct. That's how I was understanding the statute to say, well, you could write restitution colon funeral expenses of the family if you don't know the number, but you're describing it. You could put in colon $35,000, whatever, whatever, if you know in advance what the funeral expenses are or something like that. And I take your argument to be because there's no abstract number to be put in there. The only way you plug it in is either through, I guess you could have a generic yes, and then that just indicates the parties are going to fight about what the yes means. But when you put in a, you're saying the only thing that could possibly mean is just none. It is just saying there is no restitution to be had, and that could be based on the facts. I take it that's your argument. That's correct. It's very different from a penalty like a fine. It's different from the maximum range of punishment prescribed by the statute. The party had agreed at the time of the plea agreement that he was going to pay restitution in the amount of the funeral expenses. The way this agreement would look would be in that first section when it talks about the parties agree that the following statutory penalty is applied. When it says restitution, it would cite the restitution statute and say that it's applicable, but it would be later in the agreement that it would say that the defendant will pay $32,000 to cover the funeral expenses. Not necessarily. You would expect the specific number tied to the funeral expenses to be in the restitution of the statutory penalties, would you, given the way this thing is written? No. I mean, certainly I've seen plea agreements that are written a number of ways. It could be plugged in directly there because it would be based, again, on the statute. That the term of imprisonment is dealt with is that first section explains the minimum and maximum under the statute, so that the particular one that they agree upon is recited later when they talk about what they're going to advocate for. Well, that's the guidelines, right, what they're advocating. Yes, and I would say, I mean, again. But that's also true, right? So if, in fact, the guideline range did not allow you to go up to 20 years, then if this was an assessment based on the facts, then you wouldn't think, actually, the maximum term of imprisonment was 20 years. They're just reciting what's available under the statute. Right, sure. I mean, later in the plea agreement, there's a more specific recitation of what the parties are going to argue about the prison term of the sentence. But here, it is just as much about a promise just as later in the plea agreement. So does your argument depend on this? So let's say I don't think that this is a representation that anyone has decided that based on the facts, there's no restitution that's justified. It's just a mistake about whether there is a statute that authorizes restitution in general. Does that affect your argument? Absolutely not. And I was about to say, Your Honor, is that mistake is generally not grounds for avoiding performance under a contract. Whatever the reasons for making this representation, whether it's a mistake, whether it's not, that's not grounds for disregarding your obligations, especially in this context. It is a mistake of law as they recite what is available. If the district court said, it seems like the statute applies, and then the government realizes that there is a restitution statute that's applicable, what is the government supposed to do there then? The government can say, I'm not going to take a position either way. The government can say, Your Honor does have discretion to oppose restitution. It goes back to your hypothetical, Judge Lee, at the beginning. The government is free to say, this court has discretion to impose restitution under the terms of the statute. But it cannot go further than that and advocate for the precise thing that it represented. So instead of saying, you think you should impose this amount of restitution, if the government had just said, you may impose this amount of restitution, then you would say there's no breach? It would be a very different case. Because again, the government is very different. We're really just talking about the difference between may and should. So if there is an argument available, if there is a doctrine of a de minimis breach, why is that a de minimis breach? Rivera has made clear that the line between simply honestly answering the court's questions and affirmative advocacy is the line that matters. And crossing that line equals a breach. All right. Thank you very much. We will take the case under advisement.